UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RUTH MORAGUEZ,

        Plaintiff,

v.                                    Case No: 6:15-cv-1579-Orl-28TBS

WALGREEN CO.,

        Defendant.

## ORDER

This case involves a slip and fall in a Walgreens drugstore and is before the Court on Plaintiff Ruth Moraguez's Motion to Remand (Doc. 11). Ms. Moraguez argues that her sole negligence claim does not meet the required amount in controversy and that Defendant Walgreen Co., which removed the case from state court, fails to establish that the parties are completely diverse. Having considered the motion and Walgreen Co.'s response (Doc. 12), I find that the motion must be denied.

**I.  Diversity of the Parties**

Defendants can generally remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). District courts have original jurisdiction over civil actions where the matter in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a). The removing party must establish complete diversity between the parties by a preponderance of the evidence. Leon v. First Liberty Ins. Corp., 903 F. Supp. 2d 1319, 1322 (M.D. Fla. 2012). "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it

has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1).  To determine the principal place of business, the court looks to the corporation's "nerve center," "which refers to 'the place where a corporation's officers direct, control, and coordinate the corporation's activities.'" Leon, 903 F. Supp. 2d at 1323 (quoting Hertz Corp. v. Friend, 559 U.S. 77, 92–93 (2010)).  "The nerve center is normally the headquarters, provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings." Id. (internal quotation omitted).  In determining the location of the corporation's nerve center, the court may consider evidence attached to an opposition to a motion to remand. See id. at 1323.

Ms. Moraguez does not dispute that she is a citizen of Florida; she takes issue, however, with Walgreen Co.'s conclusory allegation that it is both incorporated and has its principal place of business in Illinois. (See Notice of Removal, Doc. 1, at 3).  With its response to the instant motion, Walgreen Co. included an affidavit of Collin Smyser, the vice president and assistant corporate secretary for Walgreen Co.'s parent company, who states that Walgreen Co. is both incorporated under the laws of Illinois and is headquartered in Deerfield, Illinois. (Doc. 12-1).  He further states that, at its headquarters in Illinois, "Walgreen Co.'s high level officers direct, control, and coordinate [its] activities," including managing its executive and administrative operations and "operations relating to administering company-wide policies and procedures, legal affairs, and general business operations." (Id. at 2).  Based on the notice of removal and the affidavit of Mr. Smyser, Walgreen Co. establishes by a preponderance of the evidence that its principal place of business is located in Illinois and therefore establishes complete diversity between the parties.  Ms. Moraguez's motion fails on this ground.

II. **Amount in Controversy**

Where a complaint does not meet the amount in controversy on its face—and the Complaint here does not—"the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement" of $75,000, exclusive of interest and costs. Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001); see 28 U.S.C. § 1332(a). In its analysis, courts may look to the notice of removal and any other evidence submitted by the defendant to determine that removal is proper. Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 774 (11th Cir. 2010). However, evidence submitted post-removal may only be considered if it establishes facts present at the time of the removal. Id. This includes settlement demand letters. See AAA Abachman Enters., Inc. v. Stanley Steemer Int'l, Inc., 268 F. App'x 864, 866 (11th Cir. 2008). Some courts have found demand letters to be "legally certain evidence" that the amount in controversy meets federal jurisdictional requirements. Bowen v. State Farm Mut. Auto. Ins. Co., No. 6:10-cv-144-Orl-19DAB, 2010 WL 1257470, at *3 (M.D. Fla. Mar. 29, 2010) (citation omitted). But, courts must be mindful as to whether demand letters are mere "puffing and posturing" or whether they provide "specific information to support the plaintiff's claim for damages." Lamb v. State Farm Fire Mut. Auto. Ins. Co., No. 3:10-cv-615-J-32JRK, 2010 WL 6790539, at *2 (M.D. Fla. Nov. 5, 2010) (citation omitted).

As a preliminary matter, counsel for Ms. Moraguez sent two settlement demand letters to Walgreen Co.—one demanding a settlement of $100,000 and a second lowering the demand to $70,000. I can consider the $100,000 demand letter because it was sent to Walgreen Co. on July 31, 2015, well before the notice of removal was filed on September 23, 2015. However, I cannot consider the second letter because it was sent on October 21, 2015—almost a month after the notice of removal was filed.

While threadbare settlement offers containing no support for the requested settlement amount are "entitled to little weight when determining the amount in controversy," Seoanes v. Capital One Bank (USA) N.A., 6:13–cv–1568–Orl–37GJK, 2013 WL 6283651, at *2 (M.D. Fla. Dec. 4, 2013), the $100,000 settlement offer contains robust support to meet Defendant's burden; indeed, the letter does not appear to be mere posturing or puffing. In the letter, Ms. Moraguez's counsel specifies injuries including numerous severe spinal injuries,[1] neck and head injuries,[2] and a seven to ten percent permanent impairment. (Doc. 1-3). The letter also states that Ms. Moraguez has already incurred $36,250.92 in medical expenses.[3] (Id. at 3). In estimating future medical expenses, the demand letter states that Ms. Moraguez is a candidate for bi-annual cervical

---

[1] The letter states that Ms. Moraguez's most recent spinal MRI revealed

posterior disc bulges at C2-3, posterior disc bulge and spinal stenosis, with moderate right intervertbral [sic] forminal [sic] stenosis at C5-6, posterior disc bulge with stenosis and moderate right intervertebral forminal [sic] stenoisi [sic] at C6-7, disc bulge and mild left and severe right facet arthosis [sic] at C7-T1, as well as osseous and soft tissue fullness and sclerosis in the right C7 posterior and lateral mass region. T1-2 shows a posterior disc protrusion with mild spinal stenosis. T2-3 shows a disc bulge and T3-4 shows a posterior disc bulge with flattening of the anterior margin of the spinal cord.

(Doc. 1-3 at 3).

[2] The letter states that Ms. Moraguez received an MRI of her brain that revealed "mild generalized changes to [the] brain, that included inflammation or fluid within the mastoid air cells inferiorly on the right side posterior . . . [and] some inflammation or fluid within the inferior mastoid cells on the left side . . . . All the findings are consistent with localized mastoiditis." (Id. at 2). Moreover, "a CT scan revealed inflammation or fluid within the lateral aspect of the mastoid air cells on the right side" and "degenerative changes of the left temporomandibular joint." (Id.).

[3] Ms. Moraguez's argument regarding the possibility of collateral source payments does not affect the analysis for two reasons. First, I cannot account for post-judgment collateral source payments because the amount in controversy is determined as of the time of removal. See Gehl v. Direct Transp., Ltd., 6:12–cv-1869–Orl–31DAB, 2013 WL 424300, at *2 (M.D. Fla. Feb. 4, 2013). Second, even if collateral source payments were relevant in this case, Ms. Moraguez's "Motion points to no such payments." Id. at *3.

epidural steroid injections at a cost of $7,500.00 each. (Id.). The letter claims that, if those injections fail, she is a candidate for "right C7-T1 foraminotomy surgery" at a cost of $45,000. (Id.). Further, Ms. Moraguez will require twelve to fifteen chiropractic treatments per year, ranging from $100-150 per session. (Id. at 2). The letter additionally characterizes Ms. Moraguez's overall diminishment in her quality of life. (Id. at 3). In sum, the demand letter for $100,000 establishes by a preponderance of the evidence that this case meets the requisite jurisdictional amount.

### III.   Conclusion

Based on the foregoing analysis, I find that Walgreen Co. establishes complete diversity and that the amount in controversy exceeds the minimum jurisdictional requirement. It is **ORDERED** and **ADJUDGED** that Ms. Moraguez's Motion to Remand (Doc. 11) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida, on December ___, 2015.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties